**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Jack Mutnick and Beth Mutnick,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>State Farm Fire and Casualty Company,<br><br>　　　　Defendant. | Court File No.: _____<br><br><br><br>**COMPLAINT** |

For their Complaint against Defendant State Farm Fire and Casualty Company ("Defendant" or "State Farm"), Plaintiffs Jack Mutnick and Beth Mutnick ("Plaintiffs" or "Mutnicks") through their attorneys, Sauro & Bergstrom, PLLC, state and allege the following:

## THE PARTIES

1. Plaintiffs Jack Mutnick and Beth Mutnick are citizens and residents of Minnesota, currently residing at 503 Julia Circle, Spicer, Minnesota 56288 as their primary place of abode. At all times relevant hereto, Plaintiffs were also the owners of that certain real property located at 106 Lake Avenue North, Spicer, MN 56288 (the "Property"). Plaintiffs owned the Property for commercial use and/or as a rental property.

2. Upon information and belief, State Farm is organized under the laws of the State of Illinois and is domiciled in Illinois with a registered address of One State Farm Plaza, Bloomington, IL 61710. At all times relevant hereto, State Farm was in the insurance business and was duly authorized to issue policies of insurance and otherwise conduct business in the State of Minnesota.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this matter pursuant to Title 28, U.S.C. §1332(c)(1) because there is complete diversity of the citizenship of the parties and the amount in controversy exceeds $75,000. The parties are completely diverse because: (a) Plaintiffs are citizens of Minnesota for diversity purposes; and (b) Defendant State Farm is a citizen of Illinois for diversity purposes.

4. Venue is proper in this court pursuant to Title 28, U.S.C. §1391, in that a substantial part of the events or omissions giving rise to this action occurred in this judicial district. In addition, the Property that is the subject matter of this action is real property situated in this judicial district.

## THE PROPERTY

5. On or about May 31, 2012, Plaintiffs purchased the Property as an investment, with the intention to use it as a rental property and/or an art gallery.

6. At the time of purchase, the Property was in need of repair and renovation. Plaintiffs intended to self-perform minor work at the Property and hire subcontractors to perform additional work. Some minor renovation materials, such as turpentine, were located in the Property for these projects. However, shortly after purchasing the Property, Plaintiffs learned they were expecting their second child, and the planned renovations at the Property were delayed.

7. During the timeframe when the Property renovations were delayed, the Property was used to store various items of Plaintiffs' personal property, including items of significant sentimental value to the Plaintiffs.

## THE POLICY

8. Plaintiffs purchased a State Farm Rental Dwelling Policy – Special Form 3 as well as several Forms, Options, and Endorsements thereto, including without limitation: Special Form 3 FP-81003.3; Amendatory Endorsement (Minnesota) FE-8223.2; and Debris Removal Endorsement FE-7540, bearing policy number 93-BW-E197-6 (collectively the policy and all of its forms, options and endorsements comprise the "Policy"). The Policy provided insurance coverage for the Property with a stated policy period of May 31, 2013 to May 31, 2014. (the "Policy Period"). All coverage provisions of the Policy are fully incorporated herein by reference, and Plaintiffs specifically reserve the right to claim indemnity under all applicable coverage provisions. A copy of the Policy is attached hereto at *Exhibit A*.

9. Plaintiffs purchased the Policy from State Farm captive agent Mick Quinn, whose office is located at 102 Minnesota Avenue SW, Willmar, MN 56201-3355.

10. Plaintiffs paid all required premiums for the Policy.

11. The Policy defines an "insured" to include the following: "a. if the named insured is designated in the **Declarations** as an individual and is a sole proprietor, the **named insured** and the spouse." *Ex. A., p. 1 (emphasis original)*. The "**Declarations**" means, relevantly: "the policy **Declarations,** any amended **Declarations**….or any

endorsement changing any of these." *Id. (emphasis added)*. The "**named insured**" is defined as "the person…named in the **Declarations** of this policy." *Id.* at p. 2 *(emphasis original)*. The "**insured premises**" means, relevantly, "the **residence premises**". *Id.* at p. 1 *(emphasis original)*. "'**(R)esidence premises'** means the one or two family dwelling…and grounds which is shown in the **Declarations**." *Id.* at p. 2 *(emphasis original)*.

12.     The Declarations page of the Policy identifies Jack and Beth Mutnick, the Plaintiffs herein, as the "**named insureds**" of the Policy and further identifies the location of the Property at 106 Lake Avenue N., Spicer, Minnesota as an "**insured premises**". *Ex. A., Dec. Page.* The "**Coverage and Limits**" set forth on the Declarations are as follows: "A Dwelling $156,500 Dwelling Extension $15,650; B Personal Property $7,825; C Loss of Rents Actual Loss." *Id.* Plaintiffs have a $2,500 deductible under the Policy (*id.*), which is not owed if the Dwelling is a total loss. *Ex. A at p. 1*.

13.     Under "**COVERAGE A - DWELLING**", the Policy provides coverage for the Property as the "dwelling on the residence premises shown in the Declarations…" *Ex. A at p. 2*.

14.     Under "**COVERAGE B – PERSONAL PROPERTY**", the Policy provides coverage for "personal property owned or used by an insured which is rented or held for rental with the residence premises or used for the maintenance of the residence premises. This coverage applies only while the personal property is on the residence premises or temporarily off premises for repairs." *Ex. A at p. 2*.

4

15. The Policy provides "**ADDITIONAL COVERAGES**", including without limitation:

   a. **Debris Removal**: "We [State Farm] will pay the reasonable expenses you incur in the removal of debris of covered property when coverage is afforded for the peril causing the loss. This expenses is included in the limit applying to the damaged property….When the amount payable for the property damage plus the debris removal expense exceeds the limits for the damaged property, an additional 5% of that limit is available for debris removal expense." *Ex. A, Debris Removal Endorsement FE-7540.*

   b. **Reasonable Repairs:** "We [State Farm] will pay the reasonable cost incurred by you of repairing damage to covered property necessary to protect the property from further damage or loss, provided coverage is afforded for the peril causing the loss. This coverage does not increase the limit of liability applying to the property being repaired." *Ex. A at p. 3.*

   c. **Fire Department Service Charge:** "We [State Farm] will pay up to $500 for your liability assumed by contract or agreement for fire department charges incurred when the fire department is called to save or protect covered property from a Loss Insured. No deductible applies to this coverage. This coverage may increase the limit otherwise applicable." *Ex. A at p. 3.*

5

    d. **Arson Reward.** "We [State Farm] will pay $1,000 for information which leads to an arson conviction in connection with a fire loss to property covered by this policy. This coverage may increase the limit otherwise applicable. However, the $1,000 limit shall not be increased regardless of the number of persons providing information."

    e. **Collapse.** "We [State Farm] insure for directly physical loss to covered property involving collapse of a building or any part of building caused only by one or more of the following: a. fire…This coverage does not increase the limit applying to the damaged property"

16. The Policy provides coverage for "accidental direct physical loss to the property described in Coverage A and Coverage B, except as provided in Section I – Losses Not Insured." *Ex. A at p. 5*.

17. The Policy provides coverage for losses occasioned by covered perils, including (but not limited to) fire, to wit: "We insure for all loss or damage caused by fire or any damaged caused by lightning." *Ex. A., Amend. End. (Minn.) FE-8223.2, p. 1*.

18. The Policy provides **INFLATION COVERAGE**, wherein "The limits of liability shown in the **Declarations** for Coverages A and B will be increased at the same rate as the increase in the Inflation Coverage Index shown in the **Declarations**." *Ex. A at p. 5*. The Declarations page of the Policy shows an "Inflation Coverage Index" of

"228.0", which is therefore applicable to Plaintiffs' Property and the case at hand. *Id., Dec. Page*.

19.    Under "**SECTION I – CONDITIONS**", of the Policy, paragraph 3 "**Loss Settlement**", covered property losses are settled as follows:…c. Buildings under Coverage A at replacement cost without deduction for depreciation, subject to the following:…(2) We [State Farm] will pay the cost of repair or replacement without deduction for depreciation, but not exceeding the smallest of the following amounts: (a) the limit of liability under this policy applying to the building; (b) the replacement cost of that part of the building damaged for equivalent construction and use on the same premises; or (c) the amount actually and necessarily spent to repair or replace the damaged building." *Id. at p. 8*.

20.    "**SECTION I – CONDITIONS**" of the Policy, paragraph 10 "**Loss Payment**" provides: "We [State Farm] will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and: a. reach agreement with you; b. there is an entry of final judgment; or c. there is a filing of an appraisal award with us." *Id. at p. 9 (emphasis original)*. "We [State Farm] will pay the amount finally agreed upon no later than five business days after we reach agreement with you in settlement of all or part of any claim." *Ex. A, Amend. End. (Minn.) FE-8223.2*.

21.    "**SECTION I AND SECTION II – CONDITIONS**" of the Policy, paragraph 10 "**Conformity to State Law**" provides: "When a policy provision is in

7

conflict with the applicable law of the State in which this policy issued [herein, Minnesota], the law of the State will apply." *Ex. A at p. 15*.

22. "**SECTION I – CONDITIONS**" of the Policy, paragraph 6 "**Appraisal**" (the "Appraisal Provision") provides: "If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the **residence premises** is located to select an umpire. The appraisers shall then set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us." *Ex. A at p. 8*.

23. Minn. Stat. § 65A.01, subd. 3 applicable to fire policies issued in Minnesota provides:

> In case the insured and this company, except in case of total loss on buildings, shall fail to agree as to the actual cash value or the amount of loss, then, on the written demand of either, each shall select a competent and disinterested appraiser and notify the other of the appraiser selected within 20 days of such demand. In case either fails to select an appraiser

8

within the time provided, then a presiding judge of the district court of the county wherein the loss occurs may appoint such appraiser for such party upon application of the other party in writing by giving five days' notice thereof in writing to the party failing to appoint. The appraisers shall first select a competent and disinterested umpire; and failing for 15 days to agree upon such umpire, then a presiding judge of the above mentioned court may appoint such an umpire upon application of party in writing by giving five days' notice thereof in writing to the other party. The appraisers shall then appraise the loss, stating separately actual value and loss to each item; and, failing to agree, shall submit their differences, only, to the umpire. An award in writing, so itemized, of any two when filed with this company shall determine the amount of actual value and loss. Each appraiser shall be paid by the selecting party, or the party for whom selected, and the expense of the appraisal and umpire shall be paid by the parties equally.

### **The Fire**

24. On or about November 13, 2013, Plaintiffs suffered a water loss (the "Water Loss") at the Property when a pipe broke in the upstairs bathroom of the Property. Following the Water Loss, the electrical service to the Home was shut off for safety reasons, as the Home was being inspected and repaired.

25. To repair the water damage to the Home from the Water Loss, Service Master Professional Services ("Service Master") and/or its representatives performed a moisture inspection, water mitigation (dry down), demolition, cleaning, electrical work, and testing services at the Home. Plaintiffs provided Service Master with a key to the Home to perform its work and services there.

26. In order to perform the demolition work, Service Master requested that Plaintiffs have the electrical service turned back on, which the electrical service provider (Excel Energy) would not do until an official electrical inspection was provided to it. Service Master and/or its representative, who was represented to be an electrician,

inspected the Home and sent the inspection report to Excel Energy, and the electrical service was turned back on.

27. Once the electrical at the Home was again in service, Service Master and/or its representatives and/or subcontractors commenced drying down the Home and performing demolition work and electrical work, including work to electrical outlet(s) and circuitry, to mitigate the water damage. Plaintiffs advised Service Master of a live circuit in the basement level of the Home adjacent to where some of the water damage had occurred and requested that Service Master's representative and/or subcontractor completely disconnect that circuitry. Service Master and/or its representative or subcontractor refused to do so, represented that it would be too labor intensive, and, instead, advised the Plaintiffs that the wires would be cut back to a point near the furnace and taped off. Service Master and/or its representative or subcontractor reassured Plaintiffs that this methodology was safe.

28. Days later and approximately one week after the Water Loss, on November 20, 2013 when the Policy was in full force and effect, a fire occurred at the Property (the "Fire" or "Fire Loss").

29. As a result of the Fire and the related smoke and firefighting efforts, the Property suffered significant damage from the basement level of the home through the attic and roof.

30. The Fire further damaged Plaintiffs' personal property located within the Property, including a number of items of deep sentimental value such as the crib of their first child and other nursery furniture; a dresser from Mr. Mutnick's childhood, which

was the first piece of new furniture his family had ever owned; a railing from their primary residence that was going to be reinstalled in that home; and two power recliner couches intended for Mrs. Mutnick's mother.

### The Claim

31. Following the Fire, Plaintiffs immediately submitted a claim to State Farm for the Fire Loss and damage at the Property. State Farm designated the claim as claim number 23-26P0-804 (the "Claim").

32. Plaintiffs cooperated with State Farm in accordance with the Policy's terms, including but not limited to, allowing State Farm to inspect the Property; providing all requested documents and financial information, providing statements, submitting to interviews, providing recorded statements; attending examinations under oath, fully cooperating with City of Spicer authorities and the State of Minnesota Fire Marshall's investigation of the Fire loss; fully cooperating with State Farm's claim's department and Special Investigation Unit's investigation of the Loss; and providing a proof of loss for the Fire Loss and all material information honestly and accurately to the best of their ability.

33. Defendant had a full and fair opportunity to investigate the Claim and, despite Plaintiffs' full cooperation and Plaintiffs complying with all conditions precedent to coverage under the Policy, on October 7, 2014, State Farm denied Plaintiffs' Claim, wrongfully alleging that Plaintiffs had violated the "Intentional Acts" and "Concealment or Fraud" provisions of the Policy.

34. Plaintiffs have sustained damages as a result of State Farm's wrongful conduct and breach of the Policy terms and agreement.

## COUNT I
### (*Breach of Contract*)

35. Plaintiffs restate and reallege the foregoing paragraphs as though fully stated herein.

36. An enforceable contract of property insurance exists for the Fire Loss at the Property between Plaintiffs, as the insureds, and State Farm, as insurer.

37. The Fire occurred during the Policy Period.

38. Fire is a covered cause of loss under the Policy.

39. Plaintiffs' damages related to the Fire are covered under the Policy.

40. Plaintiffs have fulfilled all of their obligations under the Policy, including but not limited to: payment of all premiums owed; providing prompt notice of the Fire Loss; cooperating with the investigation of the Claim; numerous meetings and telephone calls with State Farm representatives; providing requested documents and information to State Farm; appearing for examinations under oath; providing recorded statements; providing access to the Property for State Farm and its selected experts and representatives; responding to State Farm's request for a Proof of Loss; providing all information honestly and accurately to the best of their ability; and preserving the evidence of the Fire scene. Inasmuch, all conditions precedent to the performance of State Farm's obligations under the Policy have been satisfied.

41. Plaintiffs are entitled to full indemnity from State Farm in accordance with the promises set forth in the Policy and as required by Minnesota law, including but not limited to, full indemnity owed for the Property damage from the Fire.

42. State Farm has actually and constructively denied benefits owed to the Plaintiffs for the Fire loss and damage at the Property and has breached the terms of its insurance contract (the Policy and all of its amendatory endorsements) with Plaintiffs by, among other things, refusing to indemnify Plaintiffs for the Fire Loss and by wrongfully denying the Claim without providing any evidentiary basis for its erroneous conclusions and bases for denial.

43. As a direct result of State Farm's breaches of its insurance contract, Plaintiffs have been damaged in an amount exceeding $75,000, the exact amount to be proven at trial.

## COUNT II
*Declaratory Judgment*

44. Plaintiffs restate and reallege the foregoing paragraphs as though fully stated herein.

45. An actual controversy exists between Plaintiffs and State Farm regarding the rights and obligations of the parties under the Policy. A resolution of this controversy is dependent upon an analysis of the Policy and the facts of this matter, giving rise to Plaintiffs' Claim under the Policy.

46. Pursuant to Title 28, U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure, this Court is vested with the power to declare the rights and liabilities of the parties hereto and to give such other and further relief as may be necessary.

47. Plaintiffs are entitled to an Order of this Court declaring that: (a) the damages and losses suffered by Plaintiffs as a result of the Fire at the Property are covered under the Policy; and (b) any dispute between Plaintiffs and State Farm regarding the extent and amount of Plaintiff's damages from the Fire at the Property are properly resolved by appraisal pursuant to Minn. Stat. §65A.01, subd. 3 and the Appraisal Provision of the Policy, and all Policy provisions regarding loss payments.

## COUNT III
### *Violation of Minn. Stat. § 60A.0811*

48. Plaintiffs restate and reallege the foregoing paragraphs as though fully stated herein.

49. Minn. Stat. § 60A.0811 provides that if an insurer fails to fulfill a duty, provide services, or make a payment on a properly presented claim, the insured is entitled to the claim amount plus ten percent (10%) interest calculated from the date of the request.

50. Plaintiffs are insureds and named insureds under the Policy.

51. Plaintiffs promptly, honestly, and properly reported the Fire Loss and damages to the Property to State Farm and submitted the Claim for full indemnity under all applicable Policy provisions.

52. Plaintiffs properly, honestly, and promptly presented the Claim to State Farm under the Policy and otherwise.

53. State Farm has failed to fulfill its duties, provide services, and/or make payment under all applicable coverages of the Policy for the Fire Loss Claim.

54. State Farm has refused to indemnify Plaintiffs for the damages incurred as a result of the Fire Loss at the Property and wrongfully denied coverage for the Claim without providing evidence in support of its erroneous conclusions and denial.

55. State Farm has violated Minn. Stat. § 60A.0811.

56. As a result of State Farm's violation of Minn. Stat. § 60A.0811, Plaintiffs are entitled to the full amount of the Claim, an amount exceeding $75,000 to be proven at trial, plus ten percent (10%) interest calculated from the date Plaintiffs first reported the Claim to State Farm.

## COUNT IV
### *Order for Appraisal*

57. Plaintiffs restate and reallege the foregoing paragraphs as though fully stated herein.

58. In order to fully preserve all of Plaintiffs' rights under Minnesota law, the Policy, and otherwise and given State Farm's current refusal to pay any funds owed to Plaintiffs, a dispute actually, or at a minimum potentially, exists between Plaintiffs and State Farm regarding the extent and amount of Plaintiffs' loss and damages resulting from the Fire.

59. Under the Appraisal Provision of the Policy and Minn. Stat. §65A.01, subd. 3, the amount of loss, except in the case of total loss, must be resolved through the appraisal process set forth therein.

60. Pursuant to the Appraisal Provision of the Policy and Minn. Stat. § 65A.01, subd. 3, except in the case of total loss, Plaintiffs and State Farm Insurance are required to resolve any disagreements over the extent and amount of the loss and damage from the Fire through the appraisal process.

61. To resolve any dispute over the extent and amount of Plaintiffs' loss or damages resulting from the Fire covered under the Policy, except in the case of total loss, Plaintiffs are entitled to an Order of this Court that directs State Farm to engage in the appraisal process set forth in the Appraisal Provision of the Policy and Minn. Stat. §65A.01, subd. 3 for a binding resolution of any such dispute.

WHEREFORE, Plaintiffs requests judgment of this Court awarding them the following relief:

1. Declaring that the liability, losses, costs, expenses and damages incurred by Plaintiffs as a result of the loss and damages from the Fire at the Property are covered under the Policy issued by State Farm;

2. Declaring that any dispute over the extent and amount of Plaintiffs' loss or damages resulting from the Fire, except in the case of total loss, must be resolved by way of the appraisal process set forth in the Appraisal Provision of the Policy and Minn. Stat. §65A.01, subd. 3;

3. Awarding in favor of Plaintiffs and against State Farm, damages in an amount exceeding $75,000 for State Farm's breach of the insurance contract and all damages occasioned by State Farm's denial, the exact amount to be proven at trial;

4. Awarding Plaintiffs their attorneys' fees, costs, disbursements, and pre- and post-judgment interest at ten percent (10%) per annum calculated from Plaintiffs' first notice of the Claim to State Farm pursuant to Minn. Stat. §§ 60A.0811 and as otherwise allowed by law; and

5. Awarding Plaintiffs any other such relief as the Court deems just and equitable.

**PLAINTIFFS DEMAND A JURY ON ALL ISSUES SO TRIABLE.**

*SAURO & BERGSTROM, PLLC*

Dated: May 15, 2015    By:   /s/ Adina R. Bergstrom          .
                                            Adina R. Bergstrom (MN License No.0337833)
                                            Brenda M. Sauro (MN License No.0324656)
                                            922 Inwood Avenue North
                                            Oakdale, MN 55128
                                            (651) 389-9915

*ATTORNEYS FOR PLAINTIFFS*